UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

CARLTON TOWNSEND,
PLAINTIFF

CASE No.: 1:05-CV-765
JUGE  DLOTT

V.

OHIO DEPARTMENT OF
MENTAL HEALTH, et. al.,
DEFENDANT

## REPORT AND RECOMMENDATION

Before the Court is Defendants', Ohio Department of Mental Health, Gina Kleiman, Liza
Banks, and Campus Police, Motion for Summary Judgment (Doc. 19). To date, Plaintiff has not
filed a memorandum in opposition. For the reasons which follow, the court recommends that
Defendants' motion be granted.

## FACTUAL BACKGROUND[1]

On November 23, 2005, Plaintiff Carlton Townsend ("Townsend") filed a complaint
against the Ohio Department of Mental Health ("ODMH"), Gina Kleiman, Liz Banks, and
Campus Police pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e *et. Seq.*
(Title VII) alleging discrimination based on his race, African American, and in retaliation for
protesting discrimination practices and policies. Plaintiff makes these allegations based on a
parking ticket he was issued by Campus Police, the suspension of his driving privileges, a
written reprimand he received, and his placement on a time management schedule by his
supervisor. (Doc.3 Nov. 28, 2005, ¶¶ 3, 5, 6, Complaint).

---

[1]Because Plaintiff failed to provide a memorandum in response to Defendants' motion,
Defendants' recitation of the factual background is undisputed. It is from Defendants' motion, as
well as Plaintiff's Complaint, that we recite the facts of this case.

In May of 2000, Townsend began his employment at the ODMH at Summit Behavioral Healthcare ("SBH") division as a custodial worker. In April 2001, he was promoted to Storekeeper 1. (Affidavit of Rhonda Milton, ¶ 3). In June of 2003, Townsend applied for two vacant positions, Storekeeper 2 and Storekeeper Supervisor, at SBH. (Milton Aff., ¶ 6). Although each position had different minimum requirements, Townsend submitted the same bid for both positions. Id. Among other requirements, the Supervisor position required 3 months training or 3 months experience in employee training and development; or 6 months experience as a Storekeeper 2. (Milton Aff., ¶ 8). Townsend did not mention any of these qualifications on his application. (Milton Aff., ¶ 7).

Townsend was offered the Storekeeper 2 position. (Milton Aff., ¶6). He was not considered or interviewed for the Storekeeper Supervisor position because he failed to meet one of the minimum requirements dictated by the state. (Milton Aff., ¶ 8). SBH's Human Resources Administrator furnished Townsend with a memo outlining the reasons for his non-selection. Furthermore, he was told to submit for review any additional information that would qualify him for the position sought. Townsend did not submit any additional information. Id.

After interviewing six applicants, ODMH hired co-defendant Gina Kleiman ("Kleiman") for the Storekeeper Supervisor position. (Milton Aff., ¶ 10). In addition to meeting the minimum requirements, Kleiman had over three years of managerial experience and possessed college experience from Columbus State Community College and Columbus College of Art and Design. Kleiman started a time management schedule, which Townsend and other employees, including Keliman, had to abide. Id.

In November 2003, Townsend received a written reprimand for parking in the fire lane in front of the building. Using the grievance process, the written reprimand was reduced to a verbal reprimand and after the passage of two years, the discipline was removed from Townsend's personnel file. (Milton Aff., ¶ 11).

In May 2004, SBH issued Townsend a $300 Ohio Uniform Traffic Ticket for parking the state vehicle in a handicapped space. (Affidavit of Brian Karst, ¶¶ 2,3). While researching Townsend's file, it was discovered that Townsend's driver's license had been suspended. (Karst Aff., ¶ 5). In June 2004, SBH informed Townsend that he was no longer to drive the mail truck until an investigation about the status of his license concluded. (Milton Aff., ¶ 16). That same month, Townsend was issued a written reprimand for failure to comply with the supervisor's

directions, after being instructed not to park in the visitor's parking space. (Affidavit of Stan Temple, ¶¶ 3, 6). Furthermore, a day after Townsend's written reprimand, Campus Police issued a warning ticket to the Storeroom vehicle for parking outside of a permitted area. (Id. at ¶4).

Finally, Townsend was suspended for 2 days due to the results of an investigation conducted after Kleiman reported that Townsend made and/or attempted to make unwelcome physical contact with her. (Milton Aff., ¶ 13). Townsend contends that the suspension and the sexual harassment claims were in retaliation for filing a Charge of Discrimination against Kleiman. (Doc. 3).

## SUMMARY JUDGMENT STANDARD

A motion for summary judgment should be granted if the evidence submitted to the court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56. *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action. *Celotex*, 477 U.S. at 323.

A party may move for summary judgment on the basis that the opposing party will not be able to produce sufficient evidence at trial to withstand a motion for judgment as a matter of law. In response to a summary judgment motion properly supported by evidence, the non-moving party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *Sixty Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987); *Harris v. Adams*, 873 F.2d 929, 931 (6th Cir. 1989). Conclusory allegations, however, are not sufficient to defeat a properly supported summary judgment motion. *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1162 (6th Cir. 1990). The non-moving party must designate those portions of the record with enough specificity that the Court can readily identify those facts upon which the non-moving party relies. *Karnes v. Runyon*, 912 F. Supp. 280, 283 (S.D. Ohio 1995)(Spiegel, J.). "[A]fter a motion for summary judgment has been filed, thereby testing the resisting party's evidence, a factual issue may not be

created by filing an affidavit contradicting [one's own] earlier deposition testimony." *Davidson & Jones Dev. Co. v. Elmore Dev. Co.*, 921 F.2d 1343, 1352 (6th Cir. 1991).

The trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine factual issue for trial. *Anderson*, 477 U.S. at 249-50. In so doing, the trial court does not have a duty to search the entire record to establish that there is no material issue of fact. *Karnes*, 912 F. Supp. at 283. *See also Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989); *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988). The inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson*, 477 U.S. at 249-50.

If, after an appropriate time for discovery, the opposing party is unable to demonstrate a *prima facie* case, summary judgment is warranted. *Street*, 886 F.2d at 1478 (citing *Celotex* and *Anderson*). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## A. The Title VII claim

The plaintiff in a Title VII action has the burden of establishing a prima facie case of racial discrimination. Plaintiff must show that (i) he belongs to a racial minority; (ii) he applied and was qualified for a job the employer was trying to fill; (iii) though qualified, he was rejected; and (iv) thereafter, the employer continued to seek applicants with complainant's qualifications. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, at 802 (1973). The Supreme Court concluded that "Congress did not intend by Title VII, however, to guarantee a job to every person regardless of qualifications. In short, the Act does not command that any person be hired simply because he was formerly the subject of discrimination, or because he is a member of a minority group. Discriminatory preference for any group, minority or majority, is precisely and only what Congress has proscribed..." *Griggs v. Duke Power Co.*, 401 U.S. 424, 430-431, 91 S.Ct. 849, 853.

*a. Racial Minority*

Plaintiff's racial minority status (African American) is undisputed, therefore, it need not be further discussed.

*b. Application and qualification for a vacant position*

To prevail under a Title VII claim, Plaintiff has to prove that he applied and was qualified for a job the employer was trying to fill. Plaintiff applied for two open positions at SBH: Storekeeper 2 and Storekeeper Supervisor. He was offered the Storekeeper 2 position. Plaintiff declined. The State of Ohio establishes minimum qualifications for each state job position and successful applicants must meet the required standards. SBH uses a "credential review" form to ensure that applicants meet the minimum qualifications for the posted positions. Because Plaintiff did not meet two of the minimum requirements for the Supervisor position, and he did not submit additional information to SBH to establish that he was qualified for the position, he did not qualify for the position and, subsequently, was not hired for the job. Plaintiff has failed to meet the second prong of the test, therefore, the third and fourth prongs of the *McDonnell Douglas* test need not be discussed.

Because Plaintiff cannot establish a prima facie case for his Title VII claim, his claims of racial discrimination must fail.

## B. The Retaliation Claim

Plaintiff alleges that his 2-day working suspension was in retaliation for filing a charge of discrimination against Kleiman. In order to establish a prima facie case of retaliatory discharge, Plaintiff must prove (1) that he engaged in an activity protected by Title VII; (2) that this exercise of his protected civil rights was known to Defendant; (3) that Defendant thereafter took an employment action adverse to Plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action. *Canitia v. Yellow Freight Systems, Inc.*, 903 F.2d 1064, 1066 (6th Cir. 1990), *cert. denied*, 498 U.S. 984 (1990).

Once Plaintiff has established a prima facie case, the burden of production of evidence shifts to the Defendants to "articulate some legitimate, nondiscriminatory reason" for their actions. *McDonnell Douglas*, 411 U.S., at 802, 93 S.Ct., at 1824, 36 L.Ed.2d 668 (1973). If Defendants are able to articulate nondiscriminatory reasons then Plaintiff, who bears the burden of persuasion throughout the entire process, must demonstrate "that the proffered reason was not the true reason for the employment decision." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981).

## a. *Activity protected by Title VII*

§ 2000e-3 (a) of Title VII makes it unlawful for an employer to take an adverse employment action against an employee who has made a charge protected by the statute. Because Plaintiff contends that he filed a discrimination complaint against his supervisor and the Defendants do not dispute that claim, this issue will not be further discussed.

## b. *Exercise of his protected civil right was known to defendant*

Plaintiff alleges that his supervisor approached him and declared her knowledge about the discrimination charge he filed. Defendants, however, submitted sworn testimony that the supervisor did not know of the charges and did not inquire about the complaint. (Affidavit of Gina Kleiman, ¶ 8). It was Plaintiff who volunteered the information to the supervisor. Id. Regardless of the source, the supervisor was made aware of the charges filed, and therefore, it is undisputed that Plaintiff's exercise of his protected civil right was known to Defendant.

## c. *Defendant took an employment action adverse to the plaintiff*

Plaintiff contends that Defendants made an adverse employment action when they gave him a written reprimand and a two-day working suspension. He alleges that those actions were taken after his supervisor was notified of the discrimination charges he filed. Based on these allegations, it can be concluded that Defendants made an employment action adverse to Plaintiff and the burden of production of evidence shifts to Defendants to "articulate some legitimate, nondiscriminatory reason" for their actions. *McDonnell Douglas*, 411 U.S., at 802.

d. *There was a causal connection between the protected activity and the adverse employment action*

Plaintiff must prove that he would not have been disciplined "but for" engaging in the protected activity. Plaintiff failed to submit evidence supporting his allegations. Because the burden of persuasion is on him, he has failed to meet his burden of persuasion, and therefore, Plaintiff has failed to establish a prima facie case of retaliation.

*Legitimate, nondiscriminatory reason for action*

Assuming Plaintiff had established a prima facie case, Defendants submitted evidence and affidavits in support of their nondiscriminatory reasons for their actions. Plaintiff was issued a written reprimand for failure to comply with the supervisor's directions. Also, Plaintiff's driving privileges were revoked temporarily until further investigation into the status of his license after the police reported, while issuing him a traffic citation for parking in a handicapped parking space, that his license was suspended at one point. Furthermore, Defendants submitted evidence that Plaintiff's two-day working suspension was the result of a discipline investigation that found Plaintiff in violation of SBH's disciplinary guidelines, not because Plaintiff filed a charge of discrimination.

Because Defendants are able to articulate legitimate, nondiscriminatory reasons for their actions, Plaintiff must demonstrate that the reason articulated is not the true reason for the employment decision and it was only a pretext for discrimination. *Burdine*, 450 U.S. at 256. Although Plaintiff bears the burden of persuasion throughout the entire process, because he failed to submit a memorandum in opposition to Defendants' motion for summary judgment, nor did he submit evidence to establish Defendants' actions were pretextual, the Court finds that Plaintiff has failed to meet his burden.

### C. Claim against Defendants Gina Kleiman and Liz Banks

Although the Ohio Revised Code 4112.02 provides for individual liability, and the term "person" includes, individuals, agents and employees, O.R.C. 4112.01 (A), the Sixth Circuit is clear that "an individual employee/supervisor, who does not otherwise qualify as an

"employer," may not be held personally liable under Title VII.." *Wathen v. General Electric Co.*, 115 F.3d 400, 405 (6th Cir. 1997). Therefore, because Defendants Kleiman and Banks are not the employers and Plaintiff offered no evidence to indicate that Defendants Kleiman and Banks otherwise qualify as an "employer" under Title VII, Defendants must be granted summary judgment in their individual capacity.

## CONCLUSION

Defendants submitted evidence that adequately supports their summary judgment motion and demonstrates there is no issue of any material fact. Plaintiff, however, did not submit any probative evidence necessary to resolve the parties' differing versions of the dispute at trial; instead, he merely made conclusory allegations which are not sufficient to defeat a properly supported summary judgment motion.

It is therefore recommended that:

1) Defendants motion for summary judgment (Doc. 19) be granted.
2) This case be terminated on the Courts Docket.

_____
Date

_____
Timothy S. Hogan
United States Magistrate Judge

# NOTICE

Attached hereto is the Report and Recommended decision of The Honorable Timothy S. Hogan, United States Magistrate Judge, which was filed on 9/28/2007. Any party may object to the Magistrate's findings, recommendations and report within ten (10) days after being served with a copy thereof or further appeal is waived. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see also* Fed. R. Civ. P. 72(b). Such parties shall file with the Clerk of Court, and serve on all Parties, the Judge and the Magistrate, a written Motion to Review which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made along with a memorandum of law setting forth the basis for such objections. (Such parties shall file with the Clerk a transcript of the specific portions of any evidentiary proceedings to which an objection is made).

In the event a party files a Motion to Review the Magistrate's Findings, Recommendations and Report, all other parties shall respond to said Motion to Review within ten (10) days after being served a copy thereof. *See* Fed. R. Civ. P. 72(b).

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY | |
|---|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br><br>X | ☐ Agent<br>☐ Addressee |
| | B. Received by ( *Printed Name)* | C. Date of Delivery |
| 1. Article Addressed to:<br><br>Carlton Townsend<br>6269 Savannah Court<br>Cinti, OH 45224 | D. Is delivery address different from item 1? ☐ Yes<br>   If YES, enter delivery address below:  ☐ No | |
| | 3. Service Type<br>☑ Certified Mail  ☐ Express Mail<br>☐ Registered  ☐ Return Receipt for Merchandise<br>☐ Insured Mail  ☐ C.O.D. | |
| | 4. Restricted Delivery? *(Extra Fee)*  ☐ Yes | |
| 2. Article Number<br>  *(Transfer from service label)* | 7007 1490 0001 0562 6196 | |

PS Form 3811, August 2001          Domestic Return Receipt                    102595-01-M-2509

1:05cv765   Doc. 21